Richardson J.,
dissenting. A brief exposition of the will of W. Waller, predicated upon express decisions of our own Courts is offered, in order to shew, that the just and legal construction of his will was made, by the Court of Errors in the case Of J. C. Waller, and others, vs. S. Alford, (Riley’s Ch. cases, 247.) It is high time that the common limitation of a legatee, “to him and his issue forever,” should be understood as Settled in its legal import. The Will of W. Waller was then considered upon the limitation to the legatee, Samuel Waller and his surviving issue, together with, the same question arising out of the will of Thomas Bell, in the cases of Ferrill vs. Talbot, and Henry & Talbot vs. Archer. Waller’s and Bell’s wills Were then considered by the Court as identical in their limitation to the surviving issue; accordingly one decision covered these three cases; two of which arose out of Thus. Bell’s Will; the other on W. Waller’s will. But the adjudged identity of the limitations in the two wills has been opened for further discussion in the present case, in my individual judgment in this particular case, the title made by Samuel Wal *803 ler, who was both executor of W. Waller, and legatee, secures the title of defendant. And the argument I now offer, is, to point out: that to alter the former construction, must virtually set afloat the principle of construction, supposed to have been permanently decided, not only on Waller’s will, but on Thomas Bell’s; and was intended to constitute a leading case for the construction of all similar bequests of a limilotion to surviving issue, as purchasers, after a general bequest to all issue; and in default of such, over to remaindermen. The will of Wm. Waller, as far as it bears upon the question of the case before us, is as follows: “Item. I give and bequeath unto my beloved wife, Elizabeth Waller, one negro woman Diana, and her child Mary, with all their future increase, to be at her disposal forever; also, one bay yearling mare, one cow and calf, one ewe and lamb, with their*and each of their future increase, to her and her disposal forever; also, the use pf one pegro girl named Venus, with hep increase, during her natural life, and at her death to return to my spp Alex. Waller, to him and the lawful issue of his body fopever; also, the use of my plantation on which I now live, and tools of every kind, all my household and kitchen furniture, except what is hereinafter bequeathed; also, the stock of hogs known and distinguished by the Kingstown gang, until my son Alex. Waller arrives at the full age of 21 years, and then to be equally divided between my wife Elizabeth, and sop Alex. Waller, share and share alike, to them and their heirs forever. Item. I give for the maintainance and support of my daughter Elizabeth Sessions, and the children slip ppw hath, or may hereafter have, the use of four negroes, viz; Hester, Mary Apn, little Hester, and Moll, with all their future increase, but not subject to the debts of, or liable to be sold, either by her present or future husband, pp husbands, for his or their debts; it being my will and intention, fop the labor and benefit of the spid four negroes, with theip future increase, to be applied solely to the support of my said daughter, and the children lawfully begotten of her body, and at her death, the aforesaid four negroes, with their increase, to be equally divided among the phildren as aforesaid; also, one feather bed, in like manner. Item. I give to my son-in-law, Robert R. Sessions, one dollar, to *804 be paid to him 12 months after my decease, out of my estate. Mem. I give and bequeath unto my son Samuel Waller, the use of six negroes, viz: Hannah, Rachel, Jeffrey, Jack, Peggy,'and Daniel, with their future increase; also, one bed and furniture, and one shot gun, now in his possession; to him and the lawful issue of his body forever. Mem. I give and bequeath to my son Alex. Waller, exclusive of what has been already mentioned, the use of two negroes, viz: Sally, and Patty, with their future increase; also, one bay mare, one cow and calf, and one ewe and lamb; to him and the lawful issue of his body forever. Mem. It is also my will and desire, that if any of my children before named should die under age, or without leaving lawful issue of their body, that the legacy bequeathed unto them, and property given to them, be equally divided among my surviving children, urtder the same restrictions and regulations as are specified in their respective bequests.” Any one who reads this will may observe: that wherever W. Waller intends to bequeath a life estate only, or a less estate than for life, he does it uniformly in the same terms; — see five instances, — “the use of one negro girl to — ” (fee.; “the use of my plantation to — ” (fee.; “the use of four negroes,” (6c.; “the use of six negroes to — ” (fee.; and “the use of four negroes to — ” (6c. (fee. In all other bequests he gives the thing, not the mere use; and uses terms to shew an extension of the estate — “forever,” (fee.
We have to consider the third of these bequests. The question is this: does the bequest of “the use of six negroes to Samuel Waller and the lawful issue of his body forever,” but, “if he should die under age, or without leaving issue of his body” — then over to his surviving brothers and sisters. Does such a bequest — first to issue generally, but explained to mean surviving issue — constitute an estate forever in Samuel Waller upon his coming of full age, in virtue of the words “if he should die under age,” so as to defeat the surviving issue, if any, and also the surviving brothers and sisters whose, right, according to the former decision, was fully recognized as remaindermen. IfSam’l. Waller got an indefeasible title at full age, then, of course, the defendant’s (Ward’s) title is good; and any surviving issue, as well as the remaindermen, could have no title. Such is the consequence of the construction now proposed.
*805 On the other hand — supposing the words “if he should die under age” to make no difference in the estate given to Samuel Waller, and then to the surviving issue. In that case, the former construction of W. Waller’s will remains unaltered; and the negro Jack belongs to the plaintiffs, who are the remaindermen, beqause there were no surviving issue of Samuel Waller, the first taker. My position is, that the words “if they should die under age, or without leaving lawful issue of their body,” meant as formerly decided — that is, the same as if the words were “if they should die under age;” or die (¿. e. at any time) without leaving lawful issue of their body. It is always to be borne in mind that it is a case for judicial construction; and any construction that goes to defeat the surviving issue, puts at naught and excludes from the will the general bequest in favor of issue; and, so doing, overthrows the entire rationale of the former decision upon both Bell’s and Waller’s will, also. That leading decision turns upon this judicial construction of words, to wit: That the bequest to Elizabeth Bell, “to her and the lawful issue of her body forever,” constitute an intended bequest — intended by the testator to her particular issue; and not merely an estate to herself, the first taker, forever. And that testatorial meaning governs all the inferences that subsequently follow. It makes such inferences to turn in favor of the surviving issue; because the issue were the favored object of the testator, in the first instance; and the whole object of the antagonist argument is to overthrow that construction of the terms “issue of the body forever,” and to substitute in its stead this meaning: that those words which would make a perpetuity, do no more than give to the first taker an estate forever, and have little or no influence in the construction of the subsequent charge referring to surviving issue only. Now, any one who will carefully consider the very imposing, yet erroneous decision in the case of Carr and Green, 2 McC. 75., upon Wm.. Wilson’s will, giving the estate to W. and T. Wilson, but not to their laioful issue forever, will perceive that if those very words of perpetuity to issue had been added to the bequest to W. and T. Wilson, the construction of the Court would not have been stronger in favor of their surviving issue. But this was *806 the error of that decision; and that error is corrected in Carr vs. Porter. Shall that error, then, not be renounced 1 And any one who will read the decision of the Court by Judge Nott, in the case of Carr & Porter, (1 McCord Ch. 65,) correcting the former decision, or that of Judge Harper upon both Thomas Bell’s will, and this very will of Wm. Waller, (Riley’s Ch. Ca. 247,) will readily see the very important difference such bequest to issue would make; and it is only by losing sight of the governing influence of the bequest “to him and the lawful issue of his body forever” in Waller’s will, that renders doubtful the unskilful attempt to express in a subsequent clause the testator’s intended limitation to surviving issue, instead of issue generally. Here, I ask — -if two general rules for expounding such limitations to issue, are not plainly established by the two cases before noted, to govern and keep uniform future decisions upon the like limitations 'l What are those rules'? First. That the words “to him and the lawful issue of his body” do mean that the testator desires and wills an independent estate to the issue. Although such words do also indicate an unlawful perpetuity, i. e. we must observe in those words, as well as the individual will of the testator, as the legal perpetuity. Secondly ; and equally manifest, that such individual desire and will being admitted as the foundation principle of construction, then all the mere judicial constructions, inductive conclusions, (fee., such as the word “or” to be changed to the word “and” - — or the like, are to be made only and for no other purpose, but to carry into practical effect such individual will, to the extent that the law permits to such issue ; and never to oppugn the lawful extent of the estate of such issue, by any mere construction in favor of the first taker, as S. Waller. This is the construction I deem mistaken; i. e. by changing ‘or’ into ‘and’ you extend the estate of S. Waller at his age of 21; not in furtherance, as the rule proposes, but in subversion of the estate to the favored surviving issue, as intended and plainly expressed by the testator. There is no general testatorial favor of the like kind expressed towards S. Waller, to authorize, by a mere construction, the extending his bequest; which would be an entire new bequest. And shall we now give him that *807 peculiar advantage? — and that too, after an acquiescence of many years in the opposite construction.
After two cases have been actually adjudged.by the established rule, and after this Court so adjudged the second of these cases ; this was done under assuredly a rational construction, which preserves the life estate of Samuel Waller, but avoids extending his estate by mere construction, in order to uphold the desire and will in favor of at least surviving issue, because of the bequest to all issue in the first instance, which includes the surviving issue, but not S. Waller.
I need not say of such a construction, or rather of so rational a distinciion “ esto perpetua”; but need only ask. Is it palpably erroneous ? If not thus erroneous, preserve it, and let the court be consistent. But to correct it you must first change the principle on which it depends ; I mean the now established construction — that these words “to him and the lawful issue of his body,’* do mean that the testator willed and intended by such words, an estate to the issue, independent of that of the first taker. He desires and wills two distinct estates; although he has expressed the second in the words of a perpetuity. This is the principle and sine qua non of that leading decision. That is, having once got the testator’s moral will, it becomes “ the polar star ” for all constructions upon after limitations to issue. (On this head of intention, see 1 Pr. Wms. 566; Doug. 327 ; 2 Brev. 66 ; 557 Black. 2 Fonb. 56; 3 Burr. 1686, and Melupson, 4 Ves. 329.) How can we bring S. Waller within that favored predicament, when it is expressly confirmed by. the will itself, to the issue. But turn to this subsequent clause, which, as far as issue is concerned, altogether depends upon the former bequest to all issue. We find it as follows : “ If any of my children should die Under age, or without leaving issue of their body,” (fee., then over to surviving brothers and sisters.
Now, then, keeping in mind that there is an intended bequest to issue; which is the index hand that points out the true meaning of this after clause, and makes the gen* eral bequest lawful; and how else can we explain it, but In this toay. If they should die under age, or die (i. e. at any time,) without leáúing lawful issue, then over to his surviving *808 children. This I grant, is no more than one construction against another, but this construction preserves the estate to any surviving issue, which is authorized by the expressed object of the testator, and in case of total failure of such issue, it goes over to surviving brothers and sisters.
This is clearly the meaning of the words, if we respect the general bequest to issue, in the first instance, as a bequest to them, and not as a mere habendum to extend the estate of S. Waller, the first taker. And it is this idea, that a bequest “ to the issue of the body forever ” would constitute a mere habendum to the legacy given to the first taker, that is corrected and decided to be erroneous in the decisions on both Bell’s and Waller’s will. Riley, 247.
It will readily be perceived, that throughout my present argument;, I pre-suppose the understanding of Chancellor Harper’s exposition of Bell’s will, but which is no more than carrying into practice the argument of Judge Nott, in Carr and Porter. But what is the other construction of Wm. Waller’s will 7 It is this. The disjunctive ‘or’is to be turned into the conjunctive ‘ and.’ How? By construction. To what end? Why, in order to make the reading this: “ If they should die under age, and without leaving lawful issue, then over,” <fec. For what purpose ? It is intended ■ for the safety of possible issue before S. Waller’s age of 21. The reason is right. But what follows? Why, the moments. Waller become of age, the estate is fixed in him by mere implication, and then the issue surviving, and the surviving children of the testator, are excluded. Here then is a new bequest to S. Waller, (as in Carr and Green, it was given in the same way to surviving issue by mere construction.) Unless the surviving issue consist of issue begotten by Samuel Waller, during his minority, and then, if S. Waller die under age, such issue are still to take the estate as purchasers. Here is, I grant, a possible boon still preserved for certain particular, and very possible, surviving issue. But if S. Waller once come of age, then no surviving issue whatever can take, because the estate then settles in Samuel Waller forever, at his full age. But what then becomes of the favored and intended independent estate to issue? It vanishes by a mere construction, in their name, but terminates by a new bequest to S. Waller.
*809 The decision now made does not, perhaps, go even thus far in favor of issue left by S. Waller, in case he die under age. But whatever be the decision on that head, my understanding cannot perceive the reason for such inconsistency : and I respectfully urge, that it arises from regarding too little, as a principle of construction, the sound rationale that governed the majority of the Court in its former decision upon this very will, and that of Thomas Bell’s will, and from not carrying out that principle, In a word — Since the decision in the case of Bell’s and Waller’s will, wherever a bequest of personal estate is to ‘him and the lawful issue of his body,’ an independent estate is intended to be given to the issue, somewhat similar to an estate in tail, of lands. But as the law does not indulge a testator in the full éntailment he wishes; yet, we are to carry out his wish and aim, whenever it can be done by any fair construction of his will, to the extent of a life or lives in being and twenty-one years and nine months after; because that extent is lawful. And I have shewn that Wm. Waller’s will fairly admits of the construction formerly put upon it by the Court of Errors; to wit: — 1. To Sami. Waller for life;— 2. To his surviving issue afterwards ; whether he die under or over age. — 3. In default of such issue, over to the surviving children of the testatator : — Which brings the limitation to issue, within the rules of a lawful limitation. This preserves the will of the testator to surviving issue, and follows out our leading decision upon such limitations. For these reasons I adhere to the construction formerly made, and dissent from the present decision, with the observation made upon a similar occasion by Lord Mansfield — “the first aim was the best.” And for a more extended argument upon the great principle I have laid down for expounding similar last wills, I refer to Judge Nott’s decision upon Thomas Wilson’s will, in Carr vs. Porter, overturning Carr and Green; and that of Chancellor Harper’s argument carrying out into practice Judge Nott’s fine illustration of what is and what is not the allowable construction of last wills, where the words require construction: i. e. You must not make a bequest by construction ; which had been done in Carr and (Green’s case: *810 and equally, you must not extend it by construction, against the general desire and object expressed by the testator. For the moral will of the testator, even and although that will appears in the unfortunate words — “to him and the lawful issue of his body forever,” — does yet direct, govern, and lead all mere constructive transpositions of phraseology to the true intent and wish of the testator; so as to uphold such moral will and intent: and for that purpose only, “or” may read “and”; but never to defeat the intentiom Our first aim being then most consistent with the expressed desire, and the wish, of Wm. Waller to favor the issue; and being entirely consistent wfith the long received — -and latterly, the sanctioned construction of W. Waller’s will, is still the best ahd the truest aim.
I do grant that I may be under some error, because I stand alone in this opinion; but, as this very opinion was once right) upon the same principle of judging it, i. e. when a majority stood up to it, I beg to be allowed to conclude by a very brief digest of the whole argument, in order to show in a few Words, — that although the many new lights now introduced, may justify the present change in judgment, the former may still deserve a brief parting valedictory. Its memory can do no harm; and possibly may do good. It may Caution against extending such constructions, to the reversing our best and most essential adjudications on last wills. The whole argument amounts to this —There is an independent estate intended by the testator for all the issue. — Granted.—"The two decisions on Bell’s will make that a fixed principle for the construction of a bequest to issue. But all subsequent intendments and mere constructions are to carry out that independent estate to issue, to the lawful extent of such limitations ; i. e. to a life or lives in being and twenty-one years and nine months after. — Granted again — in virtue of the same decisions. — The result is plain. All mere constructions must be in favor of the issue; and, therefore, never to extend the estate of Sami. Waller, the first taker. And yet, by the merest construction, of turning “or” into “and,” for the sake of the issue, the issue and the remainder lose all chance for any independent estate, the moment Sami. Waller comes of age. This might be done by a testator : *811 but the Court can’t do it by the force and dint of construction. But this constructive “and” for “or” has another striking inconsistency : — the case may happen to-morrow. If Samuel Waller had died under age, leaving a child, that one favored child would have taken the estate as a purchaser; but if Sami. Waller lived to full age, then died and left that child, and many other children, it and all would be disfranchized of their independent estate, so clearly intended by the testator, by the bequest, to all his issue. Now, then, is not the extending the estate of Sami. Waller, a new bequest to him by mfere construction ? — ■ (The very error of Carr and Green.) — Is not this in derogation of, and in face of the independent estate, expressly, not impliedly given to the issue generally ? But Sami. Waller is brought in as if he were one of the issue, to be favored by construction. Again — Is not the only reason for putting the conjunction “and” for “or,” this, — that we may preserve the estate for such issue as S. Waller might possibly leave if he died under age ? It is the only reason that can justify such a. change-. But is not such reasoning a mere fallacy; when we perceive, that it extends the whole estate to Sami. Waller at his full age : and thereby destroys the chance of that very issue and disfranchizes all surviving issue ? Is not, then, the reason for this con* structive introduction of “and” for “or” merely ostensible, and leading us estray? Does it not eventuate in a construction for Sami. Waller’s benefit, instead of the issue ? Would it not .be better for the issue to let the will stand as it is; l e, to let the estate pass to the remainder men, if Sami. Waller died under agepreserving their independent estate if they survived him, after his full age? And yet, the proposed construction is only justified for the furtherance of the bequest to issue — whose estate it destroys!
Ought the Court, then, to adopt this new construction, overturning a former adjudication, that derogated not from the bequest to Sami. Waller ; but avoided extending such bequest for life, to an estate forever.
Where, I ask, are the premises of such a construction ? They are not in the will, where alone they ought to be. The difference is striking. The present construction dis *812 franchises both the surviving issue, and the remaindermen too; whereas the former adjudication upholds, equally, the three classes of persons intended by the testator for his bounty.
For such reasons I still look upon the former adjudication as the truest, wisest and best; and I do fear a virtual, although an unintentional trenching, upon the settled principles upon which alone it was based. But as those principles were not then specifically written out and applied to W. Waller’s will, but to Bell’s will; let this now dissenting opinion, at least, supply that seeming neglect, afford the reasons of the Court, and serve to keep in memory this only safe rule for all mere inductive inferences or constructions of any written instrument — whether it be a legislative Act, as in Adger vs. The Mayor and Aldermen, just decided, and which gives an example of the premises indispensable to mere constructions of Acts, or written instruments. All judicial construction must be based upon premises plainly written in the body of the instrument itself, or its object; otherwise construction may become either a way of thinking for the maker, or the substitution of another instrument for his own. And it is only against such possible abuse of the rule of construction, that I would place a guard over this second adjudication of W. Waller’s will. The fault of which is, that like Carr and. Green, it deduces an additional bequest, where no new bequest is given by the will. But I have already said, that the defendant must still gain his case on quite another ground; and therefore no injustice follows. And my exposition is, for. ulterior and general considerations of uniformity, in all mere considerations of last wills and testaments, and of all written instruments.